# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

| | |
|---|---|
| VIVIAN PENALVER, | ) |
| Plaintiff, | ) Case No. 2:09-cv-00215-KJD-GWF |
| vs. | ) **FINDINGS &** |
| MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, | ) **RECOMMENDATIONS** |
| Defendant. | ) |

This matter is before the Court on Plaintiff's Complaint for Social Security Benefits Under Title II and Title XVI of Social Security Act (#1), filed on February 3, 2009; Defendant's Answer to Plaintiff's Complaint (#14), filed April 20, 2009; Plaintiff's Motion for Remand (#17), filed June 2, 2009; Defendant's Cross-Motion to Affirm and Opposition to Plaintiff's Motion to Remand (#22), filed August 21, 2009; and Plaintiff's Reply Brief (#24), filed September 3, 2009.

## BACKGROUND

### 1. Procedural History

Plaintiff Vivian Penalver seeks judicial review of Administrative Law Judge ("ALJ") Jeffrey D. Wedekind's May 29, 2008 decision (Tr. 12-23), which was affirmed by the Appeals Council on December 10, 2008. (Tr. 2-4). In December 2004, Plaintiff filed an application for Social Security disability insurance benefits and supplemental security income. (Tr. 36-37). The Social Security Administration denied Plaintiff's application on June 16, 2005. (Tr. 49-52). Plaintiff filed a request for reconsideration (Tr. 48), which was subsequently denied on March 27, 2006 (Tr. 44-46). Thereafter, Plaintiff requested a hearing before an ALJ (Tr. 43) and, on April 8, 2008, a hearing was held before ALJ Wedekind (Tr. 401-56).

In his written decision issued on May 29, 2008, ALJ Wedekind found that Plaintiff was not disabled under sections 216(i), 223(d) and 1614(a)(3)(A) of the Social Security Act. (Tr. 23). At the first step of the sequential analysis for determining whether a claimant is disabled, ALJ Wedekind found that Plaintiff had not engaged in substantial gainful activity since October 3, 2003.[1] (Tr. 17-18). At the second stage of disability analysis, the ALJ found that Plaintiff had the following "severe impairments" under 20 C.F.R. § 404.1520(c) and 416.920(c): herniated disc disease in the lumbar spine, history of asthma and bronchitis, major depressive disorder and anxiety disorder.[2] (Tr. 18). The ALJ determined at step three that Plaintiff did not have any impairment or combination of impairments that met or medically equaled one of the listed impairments in 20 C.F.R. § 404, Subpt. P, App. 1. (*Id.*) ALJ Wedekind further found that Plaintiff was capable of a reduced range of light level work. (*Id.*).

Penalver appealed the ALJ's decision to the Appeals Council (Tr. 5-7, 11), which denied the appeal on December 10, 2008 (Tr. 2-4). Plaintiff then filed her Complaint with this Court for review of the denial of Disability Insurance Benefits and Supplementary Security Income. (#1). On June 2, 2009, Plaintiff filed the present motion to remand (#17), in which she argues that the ALJ's decision should be reversed because 1) the ALJ's step three finding that Plaintiff's impairment did not meet or medically equal one of the listed impairments was not supported by substantial evidence (*id.* at 10-13); 2) the ALJ erred in his step five analysis because he did not make a proper mental residual functional capacity assessment (*id.* at 13-18); and 3) there is not substantial evidence to support the ALJ's finding that Plaintiff was not credible (*id.* at 18-20).

---

[1] The ALJ's opinion notes that there were several inconsistencies between Penalver's stated work history and her 2004-05 earnings record. (Tr. 17-18). However, the ALJ stated that "the current record is insufficient to determine whether the claimant actually performed the work reported". (*Id.*) Rather than delay issuing a decision to further investigate the issue, the ALJ found that found Penalver had not engaged in substantial gainful activity since October 3, 2003. (*Id.*)

[2] As part of his step two analysis, the ALJ noted that Penalver had a history of migraine headaches, but found the headaches did not rise to the level of a severe impairment because "they have reportedly been well controlled with medication." (Tr. 18). Similarly, the ALJ found Plaintiff's history of substance abuse did not rise to the level of a severe impairment because there is no evidence that Ms. Penalver engaged in substance abuse after early 2005. (*Id.*)

### 2. Summary of Testimony and Medical Evidence

Plaintiff alleges that she became disabled on October 3, 2003 due to lower back pain (Tr. at 405, 410-11), left leg pain (*id.*), anxiety (Tr. 195, 202), depression (Tr. 212), asthma (Tr. 181, 185), bronchitis and headaches (Tr. 337-41).

Ms. Penalver is a 45 year old woman (Tr. 158) with a high school education (Tr. 407) who attended culinary classes, but did not complete the cooking program (*id.*). She was previously employed as a housekeeper and a cook. (Tr. 407-10). At the time of the hearing, Plaintiff lived in Miami, Florida with her mother, sister, husband and two children.[3] (Tr. 414). She testified that she travels to Las Vegas one to two times at year to care for her sister who has been diagnosed with terminal cancer (Tr. 408, 415). During these flights, Penalver walks around the plane for most of the flight because she alleges that she cannot sit for long periods of time without her left leg getting numb. (Tr. 415). Plaintiff testified that she had lower back pain that makes it hard for her to get out of bed in the morning. (Tr. 410). The pain radiates downward into her gluteus, left leg and the front of her thigh. (*Id.*) She has trouble sitting for too long because her leg becomes numb. (Tr. 415). Penalver testified that doctors have diagnosed the pain as the result of a herniated disc.[4] (Tr. 412, 438).

At the administrative hearing, Plaintiff testified that she last worked in 2003. (Tr. 407). However, Plaintiff's 2004 and 2005 earnings record indicates that Penalver worked at a Burger King Franchise, the Sands Expo and Convention Center, Kings Ranch Markets and Supermercado Del Pueblo. (*Id.* at 407-09). When asked about this discrepancy, Penalver explained that sometime during that time period her identity had been stolen and someone was working in Las Vegas using

---

[3] Since the date of the hearing, Penalver has relocated to Las Vegas, Nevada.

[4] Plaintiff testified that she believes the herniated disc is the result of an accident she was involved in while working in Alaska. (Tr. 412, 438). Because the back problems are the result of a workplace injury, she testified that medical professionals have indicated that they will not operate on her because the workplace injury would not be covered by Medicare. (*Id.*)

3

her name.[5] (*Id.*) However, Plaintiff admitted that the 2005 earnings record is correct with regard to employment at the Sands Expo and Convention Center, where she worked in the kitchen for two weeks. (*Id.* at 408). She testified that she quit the job due to pain in her back and her left leg. (Tr. 409-11).

Penalver testified that she had a history of drug use. (Tr. 413). During 2004, she used cocaine and other drugs due to depression. (*Id.*). However, Plaintiff stopped using narcotics by the end of 2004 without the use of a rehabilitation program. (*Id.*) Around that time, Plaintiff sought psychiatric treatment. On December 14, 2004, she was diagnosed with an adjustment disorder with depression, anxiety and opiate abuse by psychiatrist Laurence Seltzer, M.D. (Tr. 357). Upon examination, Dr. Seltzer found that Plaintiff was depressed, but fully oriented, with organized thinking, intact insight and judgment. (Tr. 356). Plaintiff testified that she was also hearing voices at the time. (Tr. 424). Based on his examination, Dr. Seltzer found Penalver had a Global Assessment of Functioning ("GAF") of 60[6] and prescribed her 10 mg of Lexapro. (Tr. 357). Plaintiff saw Dr. Seltzer again on January 12, 2005 and reported that she was "feeling better" and "feeling less anxious". (Tr. 353-54). At the time, Penalver indicated that she wished to return to work. (Tr. 353). Dr. Seltzer's report states that the Lexapro had been helpful. (Tr. 353-54). However, on January 25, 2005, Plaintiff visited a hospital emergency room, presenting to Dr. David C. Melvin with suicidal thoughts and rambling, senseless speech. (Tr. 364). Dr. Melvin diagnosed Penalver with bipolar disorder and paranoid delusions. (*Id.*) The hospital also tested her for narcotics. (Tr. 371). The test came back positive for the amphetamine / methamphetamine use and cocaine. (*Id.*) Penalver was released once it was determined she was not suicidal or a danger to herself. (Tr. 366). In March 2005, Plaintiff returned to Dr. Seltzer. (Tr.

---

[5] Penalver testified that she reported the identity theft to the police. (Tr. 409). A police report was submitted as part of the administrative record. (Tr. 56-60); *see* discussion, *supra* at 3.

[6] A GAF of 51-60 indicates Moderate symptoms, which are described as "(e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)." American Psychiatric Ass'n, *Diagnostic Manual of Mental Disorders* (4th ed. 1994) (DSM-IV), 32.

352). He found that she was relating well, not expressing suicidal thoughts and no longer taking Lexapro. (*Id.*) Plaintiff saw Dr. Seltzer again in April 2005 and he found that she was recovered and no longer required medication. (Tr. 351).

On May 4, 2005, a licensed clinical psychologist, Kathleen S. Mayers, Ph.D., performed a consultative examination of Plaintiff. (Tr. 346-50). Dr. Mayers' report indicates that Plaintiff stated that she had never used street drugs and did not have a problem with alcohol. (Tr. 346). In addition, Penalver informed Dr. Mayers that she had been depressed from December 2004 through March 2005 and had considered suicide. (Tr. 347). Dr. Mayers conducted a mental status evaluation and found Plaintiff was fully oriented and pleasant, had fair judgment and above average perceptual memory capabilities. (Tr. 347-48). The doctor diagnosed Penalver with an adjustment disorder with mixed anxiety and depressed mood (now resolved) and a GAF of 64.[7] (Tr. 350). Based on her observations, Dr. Mayers found Plaintiff would be able to interact with the general public and could handle simple and complex instructions. (Tr. 349).

In June 2005, Plaintiff had a physical consultative examination performed by board-certified internist, Rito B. Maningo, M.D. (Tr. 337-45). The report states that Penalver has a history of chronic bronchitis with a chronic cough and wheezing, but still smokes a pack of cigarettes a day. (Tr. 337). Plaintiff informed Dr. Maningo that she could walk for no more than five (5) blocks, could sit in a chair for no more than two (2) hours and could stand for no more than one (1) hour. (*Id.*) Plaintiff also denied using illicit drugs in the past. (Tr. 338). Dr. Maningo's examination revealed that Penalver had a normal gait, normal toe/heel walking, normal range of motion in her shoulders, elbows, wrists and lumbar spine and no difficulties squatting, rising or getting on or off the examination table. (Tr. 340, 342-43). Based on this, Dr. Maningo diagnosed Penalver with a history of chronic pains in the intrascapular and thoracic paraspinal regions,

. . .

---

[7] A GAF of 61-70 indicates Some Mild Symptoms, which are described as "(e.g., depressed mood and mild insomnia) OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships." DSM-IV, 32.

bronchitis, headaches and depression. (Tr. 340-41). Under this diagnosis, Dr. Maningo found Plaintiff would be limited to a medium vocational level. (Tr. 344).

On November 8, 2005, Ms. Penalver visited Roberto Llantada, M.D., complaining of lower back pain and hoarseness. (Tr. 188). Dr. Llantada ordered an MRI, which revealed a herniated lumbar disc between L4-L5 with mild encroachment on the left neuroforamen and nerve root with normal results showing at Plaintiff's dorsal spine and chest. (Tr. 189, 280, 412). Dr. Llontada also diagnosed Plaintiff with anxiety in 2006 (Tr. 195, 202, 204) and depression in July 2007 (Tr. 212). For the back pain, Dr. Llontada prescribed Penalver 500 milligrams of hydrocodone a day. (Tr. 413). Plaintiff testified that she needs the medication to be able to walk. (*Id.*) In May of 2008, Dr. Llantada prepared a Residual Functional Capacity Questionnaire for Plaintiff and reported that Penalver would not be able to work because her anxiety and the disc herniation at L4-5 would prevent her from working an eight hour work day. (Tr. 179-86).

On December 6, 2005, George F. Daviglus, M.D. examined Ms. Penalver. (Tr. 375-80). Plaintiff informed Dr. Daviglus that she suffered from headaches, which were controlled by medication. (Tr. 375). Penalver denied the use of any illicit drugs. (*Id.*) Dr. Daviglus reported that she had normal gait, normal range of motion for all joints and the spine, including inclination, flexion, hypertension and rotation. (Tr. 376-77). He diagnosed Plaintiff with a history of "some type of thoracic spine questionable disk," migraine headaches and mild obesity. (Tr. 377). However, Dr. Daviglus concluded that his physical examination revealed no specific localizing signs and he found that Penalver's symptoms appeared to be subjective. (*Id.*) On September 27, 2007, Dr. Daviglus examined Penalver again. (Tr. 253-58). Plaintiff complained of new pain across the lower lumbar area. (Tr. 253). Dr. Daviglus found Penalver showed normal gait, normal range of motion for the neck, extremities and back, with the exception of forward flexion of the lumbar spine, which was limited to 75 degrees.[8] (Tr. 253-58).

In December 2005 and March 2006, state agency physicians examined Plaintiff and her records and issued reports on her limitations. State agency physician Robert P. Whittier, M.D.

---

[8] 90 degrees being normal.

reviewed Penalver's records on December 19, 2005 and concluded she could lift or carry 50 pounds occasionally, 25 pounds frequently, could sit, stand or walk for six hours each in an eight hour day, and would have no other limitations. (Tr. 283-90). In March 2006, state agency psychologist Trina Christner-Renfroe, Psy.D. examined Plaintiff. She found Penalver to be moderately limited in handling detailed tasks, maintaining concentration and socially appropriate behavior, but not otherwise limited. (Tr. 274-75). As a result, she stated Penalver would be able to perform simple repetitive tasks over the course of a normal workday. (Tr. 276).

Kenneth Cloninger, M.D. testified as an impartial medical expert at the hearing. (Tr. 402, 416). He stated that Plaintiff's back problems are a "very correctable problem" that would not be long-term if corrected by surgery. (Tr. 416). He stated that there was a 95 percent chance that surgery on a bonafide disc rupture could drastically improve Plaintiff's life. (*Id.*) Without surgery, Plaintiff's ruptured disc could well be a disabling condition. (Tr. 417). He stated that Plaintiff's complaint of numbness in her legs when she sits for long periods of time comports with a diagnosis of foraminal stenosis and that he believed Penalver suffers from chronic non-radicular pain, but did not have a weakness that the neurological tests identified. (Tr. 417, 426).

However, Dr. Cloninger testified that Plaintiff's lumbar condition did not meet listing 1.04. (Tr. 426-27). Based on the objective medical evidence, Penalver did not equal the listing (Tr. 428), but taking into account her subjective complaints Dr. Cloninger believed Penalver's lumbar condition would likely equal the listing (Tr. 427-28). He found the subjective complaints reasonable in light of the MRI scan, which showed that Plaintiff had some compression of the nerve root. (Tr. 429-30). As a result, Dr. Cloninger concluded that Plaintiff would be limited to a reduced range of light work with no climbing, sitting for no more than 30 minutes at a time and would be able to sit for five (5) or six (6) hours if allotted frequent breaks where she was able to stand up. (Tr. 432-35). He testified that standing alone would relieve the pain and numbness and Plaintiff could simply work while standing. (Tr. 432-35, 448). According to Dr. Cloninger, Plaintiff would be able to stand and walk for four (4) hours in an eight (8) hour day, be able to lift up to 20 pounds occasionally and 10 pounds frequently and would not have problems with pushing . . .

or pulling, but bending over at the waist would cause her some pain in her lower back. (Tr. 433-34).

The ALJ then had Nicholas Fidanza testify at the hearing as a vocational expert. Fidanza stated that Plaintiff could not perform her past work as a housekeeper or cook because of her inability to stand for more than four hours in an eight hour shift. (Tr. 440-41). The ALJ presented a hypothetical question to Mr. Fidanza, asking what work was available for an individual with the limitations as presented by Dr. Cloninger, who was also limited to "no more than occasional interaction" with the public, co-workers and supervisors and spoke limited English. (Tr. 443-44). Fidanza testified that such an individual could work in small product assembly, an electronics works or an injection molding tender. (Tr. 445). All of these positions were classified as light, unskilled jobs which allow a sit/stand option and all exist in significant numbers in the local and national economies. (*Id.*)

## **DISCUSSION**

### I.   **Standard of Review**

A federal court's review of an ALJ's decision is limited to determining only (1) whether the ALJ's findings were supported by substantial evidence and (2) whether the ALJ applied the proper legal standards. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996); *Delorme v. Sullivan,* 924 F.2d 841, 846 (9th Cir. 1991). The Ninth Circuit has defined substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Woish v. Apfel*, 2000 WL 1175584 (N.D. Cal. 2000) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)); *see also Lewis v. Apfel*, 236 F.3d 503 (9th Cir. 2001). The Court must look to the record as a whole and consider both adverse and supporting evidence. *Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Where the factual findings of the Commissioner of Social Security are supported by substantial evidence, the District Court must accept them as conclusive. 42 U.S.C. § 405(g). Hence, where the evidence may be open to more than one rational interpretation, the Court is required to uphold the decision. *Moore v. Apfel*, 216 F.3d 864, 871 (9th Cir. 2000) (*quoting Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984)). The court may not substitute its judgment for that of the ALJ if the evidence can

reasonably support reversal or affirmation of the ALJ's decision. *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995).

It is incumbent on the ALJ to make specific findings so that the court need not speculate as to the findings. *Lewin*, 654 F.2d at 635 (citing *Baerga v. Richardson*, 500 F.2d 309 (3rd Cir. 1974)). In order to enable the court to properly determine under 42 U.S.C. § 405(g) whether the Commissioner's decision is supported by substantial evidence, the ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based." *Lewin*, 654 F.2d at 635.

In reviewing the administrative decision, the District Court has the power to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). In the alternative, the District Court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *Id.*

## II.   Analysis of the ALJ's Decision

Social Security disability claims are evaluated under a five-step sequential evaluation procedure. *See* 20 C.F.R. § 404.1520(a)-(f). *Osenbrock v. Apfel*, 240 F.3d 1157, 1162 (9th Cir. 2001). The claimant carries the burden with respect to steps one through four. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). If a claimant is found to be disabled, or not disabled, at any point during the process, then no further assessment is necessary. 20 C.F.R. § 404.1520(a). Under the first step, the Secretary determines whether a claimant is currently engaged in substantial gainful activity. *Id.* § 416.920(b). If so, the claimant is not considered disabled. *Id.* § 404.1520(b). Second, the Secretary determines whether the claimant's impairment is severe. *Id.* § 416.920(c). Again, if the impairment is not severe, the claimant is not considered disabled. *Id.* § 404.152(c). Third, the claimant's impairment is compared to the "List of Impairments" found at 20 C.F.R. § 404, Subpt. P, App. 1. The claimant will be found disabled if the claimant's impairment meets or equals a listed impairment. *Id.* § 404.1520(d). If a listed impairment is not met or equaled, the

fourth inquiry is whether the claimant can perform past relevant work. *Id*. § 416.920(e). If the claimant can engage in past relevant work, then no disability exists. *Id*. § 404.1520(e). If the claimant cannot perform past relevant work, the Secretary has the burden to prove the fifth and final step by demonstrating that the claimant is able to perform other kinds of work. *Id*. § 404.1520(f). If the Secretary cannot meet his or her burden, the claimant is entitled to disability benefits. *Id*. § 404.1520(a).

In applying the first two steps of the sequential evaluation under 20 C.F.R. § 404.1520(a), ALJ Wedekind found that (1) Plaintiff had not engaged in substantial gainful activity at any time relevant to the decision and (2) Plaintiff's herniated disc disease in the lumbar spine, history of asthma and bronchitis, major depressive disorder and anxiety disorder were considered severe.

### A.   Validity of ALJ's Finding at Step Three

Plaintiff argues that the ALJ did not have substantial evidence to support his step three finding that Plaintiff's herniated disc condition did not medically equal one of the listed impairments. (#17 at 10-13). According to the motion to remand, the ALJ applied the improper step three standard by failing to consider Plaintiff's symptoms and complaints when determining whether her lumbar condition equaled one of the listed impairments. (*Id.*) As a result, the Court will examine the ALJ's opinion to determine if he applied the proper legal standard for step three analysis and whether his decision is supported by substantial evidence.

At step three of the sequential analysis, a claimant must establish through evidence that her impairment or collection of impairments meets or is equivalent to a listed impairment. 20 C.F.R. §§ 404.1525, 416.925. To equal a listed impairment, a claimant must establish symptoms, signs, and laboratory findings "at least equal in severity and duration" to the characteristics of a relevant listed impairment. 20 C.F.R. §§ 404.1525(a), 416.925(a). In addition, SSA regulations related to analysis at step three state that, "In considering whether your symptoms, signs, and laboratory findings are medically equal to the symptoms, signs, and laboratory findings of a listed impairment," the ALJ "will look to see whether your symptoms, signs, and laboratory findings are at least equal in severity to the listed criteria." 20 C.F.R. § 404.1529(d)(3). At the same time, the regulation cautions that the ALJ "will not substitute your allegations of pain or other symptoms for

10

a missing or deficient sign or laboratory finding to raise the severity of your impairment(s) to that of a listed impairment." *Id.* (noting that the claimant will be found disabled "if the symptoms, signs, and laboratory findings of your impairment(s) are equivalent in severity to those of a listed impairment").

In finding that Plaintiff's condition did not equal a listed impairment, the ALJ considered Dr. Cloninger's opinion based on both the objective and subjective medical evidence and compared it with Dr. Cloninger's opinion of the severity of Plaintiff's condition when considering only the "objective evidence". (Tr. 18, 427-28). During the hearing, Dr. Cloninger initially stated that Penalver's lumbar condition would equal a listed impairment based on Plaintiff's symptoms and complaints combined with the medical evidence in the record. (Tr. 427-28). The ALJ then asked the doctor whether Plaintiff's condition would be considered medically equivalent based only on the "objective evidence"[9] contained in the medical examinations within the record. (Tr. 427). When limited to consideration of the "objective evidence," Dr. Cloninger testified that the records did not sufficiently show that Plaintiff's lumbar condition equaled a listed impairment. (Tr. 427-28). The ALJ's conclusion that Plaintiff's condition did not equal a listed impairment is based on Dr. Cloninger's "objective evidence" opinion.

The Court finds that the ALJ properly applied the legal standard under 20 C.F.R. § 404.1529(d)(3) for determining at step three if the medical evidence demonstrated that Plaintiff's condition equaled a listed impairment. A plaintiff's symptoms and subjective complaints are to be considered under 404.1529(d)(3) and compared to the symptoms contained in a listed impairment. However, an ALJ is not permitted to find a plaintiff's impairment is equivalent to a listed impairment based on the plaintiff's symptoms where a plaintiff has failed to provide sufficient objective evidence in the form of medical records, laboratory findings or document signs to demonstrate equivalence. 20 C.F.R. § 404.1529(d)(3). *Nunez v. Astrue*, 300 Fed. Appx. 504, 505 (9th Cir. 2008) (finding substantial evidence supported the ALJ's determination that a plaintiff's

---

[9] ALJ Wedekind clarified during the hearing that the term "objective evidence" included the medical examinations in the record, but did not extend to Plaintiff's statements regarding symptoms or complaints. (Tr. 427).

11

impairments did not equal a listed impairment where the record did not clearly establish equivalence by means of objective medical signs and laboratory findings). See also *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). At the hearing, the ALJ considered Plaintiff's subjective complaints at the step three evaluation, but specifically questioned Dr. Cloninger as to whether the laboratory findings and objective signs alone demonstrated that Plaintiff's impairments equaled a listed impairment. As a result, the Court finds that the ALJ applied the proper legal standard under 404.1529(d)(3) by not substituting Plaintiff's subjective symptoms for missing objective laboratory findings to raise the severity of her impairments to that of a listed impairment.

In addition, the Court finds that substantial evidence supports the ALJ's determination that Penalver's impairments did not meet or equal Listing 1.04 for "Disorders of the Spine". The ALJ's finding is based on Dr. Cloninger's testimony as an independent medical expert that there was not sufficient evidence in the record to show that Plaintiff's condition equaled the requirements of the listed impairment. (Tr. 428). The Court finds that the ALJ's step three determination based on the opinion of the independent medical expert was supported by substantial evidence.

### B. Assessment of Mental Residual Functional Capacity at Step Five

Plaintiff argues that the ALJ erred in his step five analysis because he failed to perform a proper residual functional capacity ("RFC") analysis of Plaintiff's mental impairments in four ways: 1) the ALJ did not have substantial evidence to support his step five decision; 2) the ALJ improperly considered Penalver's mental impairments as mild to moderate when the ALJ previously found that Penalver had "severe" mental impairments at step two; 3) the ALJ improperly articulated the RFC in terms of basic mental demands of work, rather than the specific limitations experienced by the claimant; and 4) the ALJ erred by limiting the hypothetical posed to the vocational expert to a person who was only minimally affected in her ability to socially interact with co-workers and supervisors. (#17 at 13-15). Defendant responds that the ALJ properly assessed Plaintiff's mental RFC because his finding was based on all of the limitations found in the ALJ's step two analysis and the medical evidence in the record. (#22 at 11). In addition, Defendants argue the ALJ properly applied the proper legal standard by asking the vocational

. . .

expert to limit the hypothetical to a person limited to occasional interaction with people due to Plaintiff's mental RFC. (*Id.*)

### 1. Substantial Evidence to Support Step Five Decision

At step five, an ALJ must assess the claimant's mental residual functional capacity to determine what work the claimant can still perform despite her mental limitations. *See* 20 C.F.R. §§ 404.1545(a), 416.945(a). In doing so, the ALJ must assess the degree to which a claimant's specific mental limitations impair her ability to perform basic work activities. *Id.*; *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a).

Here, the ALJ reviewed Plaintiff's medical records from 2004 to 2007 to evaluate how Penalver's doctors had characterized her degree of mental limitations. (Tr. 20-21). In doing so, the ALJ noted that in 2004, Plaintiff was diagnosed with "major depression and anxiety disorder," but that by July 2005 her psychiatrist reported that she "continued to do well, and was no longer taking medication for her depression and anxiety". (Tr. 20-21, 297). In May and December 2005, an independent consultative psychological evaluation reported that Plaintiff had good concentration, fair to good memory and good judgment, which indicated only mild symptoms.[10] (Tr. 21). The ALJ also considered a March 2006 report from a state agency review psychologist that concluded Penalver had "moderate limits in her ability to maintain socially acceptable behavior, to understand, remember, and carry out detailed instructions, and to maintain attention and concentration for extended periods". (*Id.*) The state agency psychologist also found that Plaintiff had no significant limits in the ability to perform simple tasks and relate to people. (*Id.*) Based on these medical records, the ALJ assessed Penalver as having "moderate limits in her ability to maintain socially appropriate behavior, to understand, remember, and carry out detailed instructions" as well as moderate limits on her "ability to maintain attention and concentration for extended periods," but that she "retains the ability to adequately perform the basic mental demands

---

[10] Plaintiff received a GAF of 64. *See supra* at 5, fn. 7.

13

of unskilled work[11]". (Tr. 21). In basing his RFC analysis on the reports of all of the psychological consultants and psychiatrists who examined and treated Plaintiff, the Court finds that the ALJ had substantial evidence to support his step five decision.

### 2. Consideration of mental impairments as mild to moderate in light of step two finding

If an ALJ finds a severe mental impairment at step two, that impairment must be considered in the remaining steps of the sequential analysis. 20 C.F.R. §§ 404.1523, 416.923. However, in assessing the claimant's RFC, the ALJ is not bound by the previous step two determination that the mental impairment is "severe". *Bray v. Commissioner of Social Security Admin.*, 554 F.3d 1219, 1228-29 (9th Cir. 2009). Instead, at step five, the ALJ must assess the degree to which a claimant's specific mental limitations impair her ability to perform basic work activities. *Id.*; *see also* 20 C.F.R. §§ 404.1545(a), 416.945(a). Here, at step two, the ALJ found that Penalver possessed two severe mental impairments – anxiety and depression. However, in conducting an analysis of Penalver's RFC, the ALJ found that Plaintiff only has mild to moderate limitations in social functioning and moderate difficulties in concentration, persistence and pace. (Tr. 18). As the ALJ was not bound by his previous finding of "severity" at step two, the ALJ properly assessed the degree to which Penalver's specific mental limitations impair her ability to perform basic work activities.

### 3. RFC must examine the specific limitations experienced by Plaintiff

Plaintiff argues the ALJ improperly articulated the RFC in terms of the basic mental demands of work, rather than the specific limitations experienced by the claimant. In doing so, Penalver argues that the ALJ's RFC merely "parrots the attributes of work" and does not examine . . .

---

[11] The ALJ defined these basic mental demands of unskilled work in his report as being able to "understand, remember, and carry out simple instructions, make simple work related decisions, respond appropriately to supervision, co-workers, and usual work situations, and deal with changes in a routine work setting." (Tr. 21).

"the limitations experienced by [the claimant]" contrary to the requirements of Social Security Regulation 85-15 and *Allen v. Barnhart*, 417 F.3d 396, 406 (3rd Cir. 2005).[12]

SSR 85-15[13] has no application to Penalver because she "claims both exertional and nonexertional impairments," whereas "SSR 85-15 provides guidance only for cases in which the claimant asserts 'solely nonexertional impairments.'" *Roberts v. Shalala*, 66 F.3d 179, 183 (9th Cir. 1995) (citing SSR 85-15 at 543), *cert. denied*, 517 U.S. 1122, 116 S.Ct. 1356 (1996). Mental impairments "are generally considered to be nonexertional . . ." SSR 85-15 at 543. Penalver, however, also claims exertional impairments. At her hearing, for instance, she testified that pain in her lower back limited her ability to sit or stand for long periods of time (Tr. 410, 415), which are exertional requirements. *Sandgathe v. Chater*, 108 F.3d 978, 980-81 (9th Cir. 1997) (citing SSR 83-10 at 178 (Cum.Ed.1983)). SSR 85-15 therefore does not apply.

Even if SSR 85-15 was applicable to Penalver's claims, the ALJ's assessment of Plaintiff's RFC properly examines how her specific mental impairments limit her ability to perform specific work tasks. The ALJ found that, given the moderate level of Penalver's mental limitations and ability to maintain socially appropriate behavior, Plaintiff retained the ability to adequately "understand, remember, and carry out simple instructions, make simple work related decisions, respond appropriately to supervision, co-workers and usual work situations, and deal with changes in a routine work setting". (Tr. 21). The ALJ assessed Penalver as being able to "adequately perform the basic mental demands of unskilled work". (*Id.*) The Court finds that the ALJ's detailed mental RFC assessment of Plaintiff's limited ability to perform specific work tasks and

---

[12] Penalver additionally argues that the RFC is improper because the ALJ failed to articulate Plaintiff's mental impairments in terms of the functional evaluation of the step two listings contained in "paragraph B" and "paragraph C" of 20 C.F.R. Pt 404, Subpt. P App. 1. (#17 at 15-16). However, as discussed above, a step five RFC assessment is not bound by the previous step two determination because the RFC examines the degree to which a claimant's specific mental limitations impair her ability to perform basic work activities, rather than whether the impairments qualify as "severe". *See supra* at 14; *Bray*, 554 F.3d at 1228-29.

[13] Social Security Rulings are binding on ALJs. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n. 1 (9th Cir.1990).

work in specific situations properly examines Penalver's limitations as required at step five.

### 4. Limiting the hypothetical posed to the vocational expert

Plaintiff also argues that the ALJ improperly limited the hypothetical posed to the vocational expert ("VE") during the hearing to a person only "minimally affected" in her ability to socially interact with co-workers and supervisors. (#17 at 17). Penalver claims this instruction is contrary to the ALJ's finding in his opinion that she has "moderate" limits in her ability to maintain socially appropriate behavior, to understand, remember, and carry out detailed instructions" (Tr. 21). (#17 at 17).

Plaintiff misconstrues the hypothetical posed to the VE. The ALJ specifically asked the VE about what job opportunities would exist for someone with Plaintiff's physical and mental limitations. (Tr. 439-55). Allowing for Plaintiff's mental impairments, the ALJ limited the VE to consider jobs with "minimal" social interaction, where a person would have "no more than occasional interaction" with the public and co-workers and supervisors. (Tr. 444). In doing so, the ALJ did not reduce Plaintiff's mental limitations from "moderate" ability to maintain social interaction to "minimal" ability. Instead, the ALJ restricted the VE to consider unskilled jobs where a person would have no more than minimal contact with people. Such a restriction to minimal interaction with people adequately reflects the mental limitations of a plaintiff with a moderate ability to maintain social interaction. *See Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008) (holding the ALJ's limiting a claimant to simple, repetitive tasks adequately captured the claimant's limitations in regard to concentration and pace); SSR 85-15 (unskilled work involves dealing primarily with objects, not people). The Court finds the ALJ properly posed a hypothetical to the VE with regard to Plaintiff's specific mental limitations.

### C. Substantial Evidence Exists to Support ALJ's Finding that Plaintiff was Not Credible

Finally, Plaintiff argues that the ALJ did not have substantial evidence to support his decision that Plaintiff's subjective complaints are not credible. (#17 at 18-20). Questions of "credibility and resolution of conflicts in the testimony are functions solely of the Secretary". *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). "The ALJ is responsible for determining

16

credibility and resolving conflicts in medical testimony." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989). However, the ALJ's credibility findings must be supported by specific cogent reasons. *Rashad v. Sullivan*, 903 F.2d 1229, 1231 (9th Cir. 1990).

Under the "Cotton test," where the claimant has produced objective medical evidence of an impairment which could reasonably be expected to produce some degree of pain and/or other symptoms, and the record is devoid of any affirmative evidence of malingering, the ALJ may reject the claimant's testimony regarding the severity of the claimant's pain and/or other symptoms only if the ALJ makes specific findings stating *clear and convincing* reasons for doing so. *See Cotton v. Bowen*, 799 F.2d 1403, 1407 (9th Cir.1986) (emphasis added); *see also Smolen v. Chater*, 80 F.3d 1273, 1281 (9th Cir.1996); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993); *Bunnell v. Sullivan*, 947 F.2d 341, 343 (9th Cir.1991). To determine whether a claimant's testimony regarding the severity of his symptoms is credible, the ALJ may consider the following evidence: (1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; (3) the claimant's daily activities; and (4) testimony from physicians and third parties concerning the nature, severity, and effect of the claimant's symptoms. *Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir.2002); *see also Smolen*, 80 F.3d at 1284. Here, the ALJ states in his opinion that he considered all of Penalver's symptoms and accepted them to the extent that they were consistent with the medical evidence. (Tr. 19). Subjective complaints that reached beyond the documented medical evidence were found to be not credible by the ALJ as a result of inconsistencies in Plaintiff's testimony, the personal observations of the ALJ during the hearing and because these subjective symptoms were inconsistent with the objective medical evidence. (Tr. 18-20).

An ALJ is permitted to consider inconsistencies between subjective complaints and objective medical evidence in assessing a claimant's credibility. *See Morgan v. Comm'r of Soc. Sec.*, 169 F.3d 595, 600 (9th Cir. 1999); *see also Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (finding the "ALJ is permitted to consider lack of treatment in his credibility

17

determination"). In his opinion, the ALJ noted that Plaintiff's complaints regarding her lower back pain were not supported by the objective medical evidence. (Tr. 20). Specifically, he noted that a November 2005 MRI showed only minor encroachment on the left neuroforamen and nerve root. (Tr. 19, 280). In addition, other medical reports showed that Plaintiff's gait and range of motion were normal and that she was able to rise and squat without an assistive device. (Tr. 340-43, 377). At least one of the doctors who examined Penalver stated that Plaintiff's complaints seemed to be subjective. (Tr. 377). Similarly, the ALJ noted that the medical records demonstrate that Plaintiff has not received treatment for her mental impairments anytime after April 2005, when Dr. Seltzer indicated she had recovered. (Tr. 20-21). *See Burch*, 400 F.3d at 681. Based on these records and Dr. Seltzer's statement in March 2005 that Plaintiff no longer required medication for mental impairments (Tr. 352), the ALJ found that Penalver's complaints of continuing depression and anxiety were not credible. These inconsistencies between the severity of the physical and mental limitations complained of by Penalver and the objective medical evidence of her limitations were part of the basis of the ALJ's finding that Plaintiff's subjective complaints were not credible.

In addition, the ALJ found inconsistencies in the medical record and in Plaintiff's testimony. *See Bunnell*, 947 F.2d at 346 (finding that inconsistent statements are a legitimate basis for finding a claimant's complaints not credible). The ALJ's opinion observes that Plaintiff told a state agency consultative psychologist in May 2005 that she never used street drugs (Tr. 338, 346, 375). However, Plaintiff testified at the hearing that she had a previous drug problem (Tr. 413-14) and the medical records show that she tested positive for cocaine and amphetamine/methamphetamine use in January 2005 (Tr. 371). The ALJ also noted inconsistencies in Plaintiff's testimony about her work history. At the hearing, Penalver initially testified that she had not worked after 2003 due to her back pain. (Tr. 407). When the ALJ questioned her about her 2005 earnings record, however, Plaintiff admitted that she had worked briefly in 2005. (Tr. 409). Penalver also testified at the hearing that she could not sit for long periods at a time. (Tr. 415). Contrary to this statement, the ALJ noted that Plaintiff's mother reported that Penalver spent her days "sitting at all times" (Tr. 20, 122). *See Thomas*, 278 F.3d at 959 (finding that an ALJ may consider statements of third parties concerning the severity and effect of the symptoms). The ALJ

also found Plaintiff's air travel twice a year from Miami to Las Vegas to be inconsistent with her testimony regarding her difficulty sitting for long periods because such a flight would require more than one hour of sitting (Tr. 20). Further, the ALJ observed at the hearing that Penalver sat for a full hour without any sign of discomfort. (*Id.*) *See Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 600 (9th Cir. 1999) (accepting an ALJ's personal observations as a partial basis for determining claimant's credibility); *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985).

Based on the ALJ's citation of a wealth of inconsistencies in the medical reports, in Plaintiff's testimony, and between Penalver's subjective complaints and the objective medical evidence, the Court finds that the ALJ stated clear and convincing reasons for finding Plaintiff's subjective complaints were not credible to the extent that they did not fit with the ALJ's RFC. This credibility finding was based on substantial evidence. *See Bunnell*, 947 F.2d 341.

## CONCLUSION

The Court finds that ALJ Wedekind's findings and determination that Plaintiff was not disabled is supported by substantial evidence and that the proper legal standards were applied. Accordingly,

## RECOMMENDATION

**IT IS HEREBY RECOMMENDED** that Plaintiff's Motion for Remand (#17) the denial of Social Security Disability Benefits be **denied** in accordance with the ALJ's decision (Tr. 12-23), dated May 29, 2008, and the subsequent decision of the Appeals Council, dated December 10, 2008 (Tr. 2-4).

**IT IS FURTHER RECOMMENDED** that Defendant's Cross-Motion to Affirm (#22) be **granted**.

## NOTICE

Pursuant to Local Rule IB 3-2, any objection to this Finding and Recommendation must be in writing and filed with the Clerk of the Court within fourteen (14) days. The Supreme Court has held that the courts of appeal may determine that an appeal has been waived due to the failure to file objections within the specified time. *Thomas v. Arn*, 474 U.S. 140, 142 (1985). This circuit has also held that (1) failure to file objections within the specified time and (2) failure to properly

address and brief the objectionable issues waives the right to appeal the District Court's order and/or appeal factual issues from the order of the District Court. *Martinez v. Ylst,* 951 F.2d 1153, 1157 (9th Cir. 1991); *Britt v. Simi Valley United Sch. Dist.*, 708 F.2d 452, 454 (9th Cir. 1983).

DATED this 25th day of June, 2010.

_____
**GEORGE FOLEY, JR.**
**UNITED STATES MAGISTRATE JUDGE**